UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 18-15(1) (JNE/DTS) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| TONY LENDELL REED, | |
| Defendant. | |

LeeAnn K. Bell, Assistant U.S. Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota, 55415, for Plaintiff

Daniel L. Gerdts, Esq., Daniel L. Gerdts Lawyer, 247 Third Avenue South, Minneapolis, Minnesota, 55415, for Defendant

## INTRODUCTION[1]

Defendant Tony Lendell Reed ("Reed") was indicted on January 23, 2018 on four counts of Interference with Commerce by Robbery [Docket No. 10]. Reed moves to suppress a potential in-court identification, suppress statements made the evening of his arrest and suppress evidence obtained from warrants for his cell phone location data.

## FINDINGS OF FACT

Beginning in June 2017, the FBI began investigating a spate of business robberies in the Twin Cities metropolitan area. Search and Seizure Warrant ¶ 5, Govt. Ex. 3. In October 2017, DNA taken from zip ties used to subdue a robbery victim matched Orlando Harris, later identified in court documents as "OH." *Id*. ¶ 8. OH was

---

[1] This matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

arrested and charged with two of the robberies.  *Id.*  OH admitted his involvement but implicated Reed as the robberies' mastermind.  Cell Location App. 934, Govt. Ex. 7.  OH identified Reed in a photo lineup and his description matched that provided by a robbery victim.  *Id.*  OH provided a phone number for Reed and a description of his vehicle.  *Id.*  Investigators confirmed OH had previously called that cell number; that Reed had previously been stopped by police in the identified vehicle; and that Reed had a criminal history, including a burglary conviction.  *Id.*  Independently, investigators had already developed Reed as a suspect. Search and Seizure Warrant ¶ 9, Govt. Ex. 3.

Investigators sought and obtained warrants for historical GPS and cell phone location data for the phone number OH represented as Reed's.   Govt. Exs. 5-8.  That data indicated Reed's purported phone was located near each of the robberies at the time of their execution.  Search and Seizure Warrant ¶ 11, Govt. Ex. 3.  The FBI later sought and received a search warrant for Reed's Memphis, Tennessee home to obtain, among other items, Reed's cell phone, arguing there was probable cause to believe it contained evidence of a crime.   Search and Seizure Warrant ¶ 23, Govt. Ex. 3.  The FBI also sought and received a warrant to search Reed's purported vehicle, likewise arguing there was probable cause to believe it contained evidence of a crime.  Search and Seizure Warrant ¶ 30, Govt. Ex. 4.

On January 4, 2018, the search warrants for Reed's home and vehicle were executed and Reed was arrested.  Interview Audio, Govt. Ex. 1.  Reed was questioned by an FBI agent for over eight minutes before he was read his Miranda rights.  *Id.*  Reed then signed an Advice of Rights, and his interrogation continued for nearly 40 minutes.

*Id.*; Advice of Rights, Govt. Ex. 2. The entire interview was recorded. Interview Audio, Govt. Ex. 1.

Reed moves to suppress the potential in-court identification of Reed by OH, the warrants for Reed's GPS and cell location data and the questioning of Reed prior to being read his rights. Docket Nos. 29-31. A hearing on these motions was held on March 21, 2018. Minutes, Docket No. 36.

## CONCLUSIONS OF LAW

### I.  Motion to Suppress Identification Evidence [Docket No. 29]

Reed moves to suppress potential future in-court identification of him by OH. [Docket No. 29]. At the March 21, 2018 motion hearing, the parties agreed that the motion should be reserved for the trial judge at the time of trial. Hearing Audio 10:46:27-10:50:13, 10:57:57-10:58:44. Accordingly, the Court does not address this motion on its merits.

### II.  Motion to Suppress Search and Seizure Evidence [Docket No. 30]

Reed moves to suppress his historical cell phone location data seized pursuant to warrant. Docket No. 30. A lawful warrant under the Fourth Amendment must be supported by probable cause. *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). Probable cause exists if the totality of the circumstances suggest "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 214 (1983). On review, the Court determines whether the issuing judge had a substantial basis for finding probable cause. *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017). Great deference is afforded the previous

judge's finding of probable cause. *United States v. Edmiston*, 46 F.3d 786, 788 (8th Cir. 1995).

Reed argues the warrant to seize his location data was not supported by probable cause. Def. Mem. 5-7, Docket No. 41. The information providing the warrant's basis was supplied by OH, who told investigators that Reed lead the planning and execution of the robbery spree. *Id.* Reed claims OH lacked credibility because he was an informant and an accused criminal who had an incentive to shift blame. *Id.* Further, Reed argues that the cell phone number identified by OH as being Reed's was not definitively tied to criminal activity at the time the warrant was sought. *Id.* at 6-7. Thus, Reed argues the warrant was a "fishing expedition" that no good-faith police officer could rely on. *Id.* at 7.

The Government disputes Reed's characterization of OH and the evidence supporting the warrant. Govt. Mem. 5-8, Docket No. 43. The Government contends OH was not a mere informant but rather an accomplice who admitted his own involvement in Reed's accused crimes. *Id.* at 5-6. Investigators knew that the robberies had been committed by a group of individuals and thus it was unsurprising that OH would implicate others. Search and Seizure Warrant ¶¶ 6-7, Govt. Ex. 3. Investigators also spoke personally with OH and corroborated some of his information, such as his DNA being present at one of the robberies and his accurate identification of Reed's photo and Reed's vehicle. Cell Location App., Govt. Ex. 5. Investigators also confirmed OH had previously called the phone number he attributed to Reed. *Id.*

There was a substantial basis for the issuing judge to conclude there was a fair probability that discovery of evidence of a crime would result from seizing Reed's phone

location history. While OH's credibility was not impervious, officers were able to corroborate much of his information prior to the warrant's issuance. Cell Location App. 934, Govt. Ex. 7. The shortcomings in OH's credibility were presented to the issuing judge. *Id.* Given the above and the deference afforded the anterior finding of probable cause, the totality of the circumstances provided the issuing judge a substantial basis to conclude seizing Reed's cell phone location history would uncover evidence of a crime.

Even if the warrant was not supported by probable cause, evidence obtained from execution of the warrant would not be suppressed. When police officers in objective good faith execute a warrant premised on a judge's determination of probable cause, the evidence cannot be excluded even if the issuing judge erred in his or her determination. *United States v. Goody*, 377 F.3d 834, 836–37 (8th Cir. 2004). Whether a police officer objectively had good faith is measured by whether a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 923 (1984). Lacking objective good faith is evidenced by a warrant devoid of any "indicia" of probable cause. *Id.*

Reed summarily declares no officer could have executed Reed's warrant in good faith. Def. Mem. 7, Docket No. 41. But as discussed *supra*, the warrant was premised on information provided by an individual whose information had been partially corroborated and deemed credible. There is nothing in the record suggesting the executing police officers should have known the search was illegal. Thus, evidence gained from the tracking of Reed's phone should not be suppressed.

5

### III.     Motion to Suppress Statements [Docket No. 31]

Reed moves to suppress his statements made the evening of his arrest prior to being Mirandized.  Docket No. 31.  While Reed admits all his post-Miranda statements are valid, he argues the roughly eight minutes of conversation with an FBI agent pre-Miranda constituted an improper interrogation.  Def. Mem. 1-5, Docket No. 41.  While that conversation primarily discussed routine biographical details, such as Reed's address, employment status and education history, the FBI agent also asked Reed his cell phone number (which Reed did not supply) and whether he owned a vehicle (which Reed denied).  Interview Audio 4:06-8:07, Govt. Ex. 1.  Because both Reed's phone number and vehicle were integral to the investigation, Reed argues the questions were investigatory in nature and not routine booking questions.  Def. Mem. 1-5, Docket No. 41.

Investigators can inquire about routine biographical information before reading a suspect their rights.  *United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996).  Routine biographical information can include a suspect's phone number if it is unrelated to the underlying crime.  *United States v. Garcia*, No. 06-269(3), 2006 WL 3832808, at *4 (D. Minn. Dec. 28, 2006);  *United States v. Angelo Harper*, No. 16-75, 2016 WL 3455358, at *5 (D. Minn. June 3, 2016), Report and Recommendation adopted, No. 16-75, 2016 WL 3440587 (D. Minn. June 20, 2016).  However, asking for a cell phone number is not routine booking information when the identity of the phone number's user is related to the investigation.  *United States v. Metcalf*, No. 05-275(1), 2005 WL 3216726, at *3 (D. Minn. Nov. 29, 2005).  Therefore,  whether it was permissible to ask Reed his phone number hinges on whether the question was "merely

6

for basic identification purposes in the usual case" or whether it was related to the "substantive offense charged." *United States v. McLaughlin*, 777 F.2d 388, 392 (8th Cir. 1985).

Here, Reed denied to the FBI agent that he had a cell phone. Interview Audio 5:26-5:31, Govt. Ex. 1. The FBI agent persisted, asking if Reed had an old cell phone number, or if he ever used a friend's cell phone. *Id.* 5:30-6:06. An old phone number or a friend's phone number would seemingly be unhelpful to establish Reed's basic identification. Tying Reed to a specific phone number, however, could have implicated Reed in the robbery spree, because investigators had tracked Reed's purported phone number's location to the proximity of several of the robberies, but had yet to definitively tie the number to Reed. Search and Seizure Warrant ¶¶ 11-19, Govt. Ex. 3. Therefore the phone questions were investigatory in nature and should be suppressed.

Reed also objects to a question about whether he owned a vehicle, which he denied. Interview Audio 7:35-7:43, Govt. Ex. 1. Favorably citing Ninth Circuit precedent, this District has suggested that questions about vehicle ownership is not routine biographical information if the investigator believed the vehicle was tied to criminal activity. *United States v. Williams*, 690 F. Supp. 2d 829, 848 (D. Minn. 2010)(citing *United States v. Henley*, 984 F.2d 1040, 1042–43 (9th Cir.1993). Reed's purported ownership of a champagne colored GMC Yukon Denali was cited in the application for Reed's search warrant, and a vehicle matching that description was searched prior to Reed's questioning. Search and Seizure Warrant ¶ 10, Govt. Ex. 3; Search and Seizure Warrant, Govt. Ex. 4. Much like the phone number queries, questioning Reed about his car had little value in establishing Reed's identity but

considerable value in tying Reed to a vehicle that was tied to the robberies. Accordingly, the question and answer about Reed's vehicle ownership should be suppressed.

The Government contrasts the intensity with which investigators questioned Reed about his phone and vehicle post-Miranda with their more deferential tone pre-Miranda to argue the pre-Miranda questions were not improper interrogation. Govt. Resp. 2, Docket No. 35. While it is true the FBI Agents' questions were more forceful post-Miranda, the FBI Agents did not know at the time of Reed's initial questioning that he would later waive his Miranda rights. Had Reed provided his phone number and vehicle information but declined an interrogation, investigators presumably would have used that information against Reed.

While Reed seeks to suppress all pre-Miranda interrogation, he only specifically objects to the phone and vehicle questions. But the rest of the questions – about Reed's full name, birthday, birthplace, social security number, address, education employment, health issues and intoxication – are routine biographical and booking questions that were irrelevant to the underlying crime. *United States v. Tran*, No. 09-172, 2009 WL 10678912, at *16 (D. Minn. Oct. 9, 2009), Report and Recommendation adopted sub nom. *United States v. Johnny Cuong Tran*, No. 09-172, 2009 WL 10678930 (D. Minn. Oct. 27, 2009); *United States v. Wilcox*, No. 10-173, 2010 WL 3893859, at *4 (D. Minn. Aug. 20, 2010), Report and Recommendation adopted, No. 10-173, 2010 WL 3853283 (D. Minn. Sept. 30, 2010), *aff'd*, 666 F.3d 1154 (8th Cir. 2012). There is no basis for those questions and answers to be suppressed, and the

Court's suppression recommendation is limited to Reed's denial of having a cell phone and Reed's denial of having a vehicle.

## RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT:

1. Defendant's Motion to Suppress Identification Evidence [Docket No. 29] be reserved as a motion *in limine*;

2. Defendant's Motion to Suppress Search and Seizure Evidence [Docket No. 30] be DENIED; and

3. Defendant's Motion to Suppress Statements [Docket No. 31] be GRANTED in part and DENIED in part.

Dated:   April 26, 2018

*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).