UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 18-15 (JNE/DTS) |
| Plaintiff, | |
| v. | ORDER & <br> REPORT AND RECOMMENDATION |
| 1) TONY LENDELL REED, | |
| 3) TYRELL DANDRE CAMPBELL, and | |
| 4) DERF REGLAN RAHINE REED, | |
| Defendants. | |

LeeAnn K. Bell, Assistant U.S. Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff;

Daniel L. Gerdts, Esq., 247 Third Avenue South, Minneapolis, MN 55415, for Defendant Tony Lendell Reed;

Patrick G. Leach, Esq., Leach Law Office, 6465 Wayzata Boulevard, St. Louis Park, MN 55426, for Defendant Tyrell Dandre Campbell; and

Andrew S. Birrell, Esq., Gaskins, Bennett & Birrell, LLP, 333 South Seventh Street, Suite 3000, Minneapolis, MN 55402 and Melvin R. Welch, Esq., Welch Law Firm LLC, Commerce at the Crossings Building, Suite 205, Minneapolis, MN 55401, on behalf of Defendant Derf Reglan Rahine Reed.

## INTRODUCTION[1]

Defendants Tony Lendell Reed ("Reed"), Tyrell Dandre Campbell ("Campbell"), and Derf Reglan Rahine Reed ("Derf") each face varying counts of interference with commerce by robbery stemming from a series of armed robberies targeting Twin Cities metropolitan area businesses. The Defendants brought numerous motions, many of

---

[1] This matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

which the Court disposed of at a July 10, 2018 hearing. What remain are a dispositive motion to dismiss [Docket No. 50] and two non-dispositive motions to sever defendants [Docket Nos. 52, 97], as well as several dispositive motions to suppress evidence or statements [Docket Nos. 95, 100, 102].[2] For reasons articulated below, the non-dispositive motions to sever are DENIED. Further, the Court recommends that each dispositive motion be DENIED.

## FINDINGS OF FACT

### I.  Tony Reed and the Original Indictment

In June 2017, the FBI began investigating a string of armed robberies targeting auto parts shops in the Twin Cities. Gov't Ex. 3, March 21, 2018 (Aff. of Charles R. Irvin ¶ 5).[3] Police found DNA on zip ties used to restrain a robbery victim and matched it to Orlando Harris. *Id.* at ¶ 8. Following his arrest, Harris admitted his involvement in two of the robberies, but identified Reed as the one who had planned them. Gov't Ex. 7, March 21, 2018 (Application for Search Warrant 2). Harris also inculpated Derf, Reed's uncle, as being involved in the June 12, 2017 robbery. Gov't Ex. 1, July 10, 2018 (Aff. of Christopher V. Langert at ¶ 8).

---

[2]  Campbell had moved to suppress statements [Docket No. 60] and to suppress the fruits of a search warrant [Docket No. 62]. Based upon the Government's representation that Campbell had not made a statement to police and that no search warrant was a part of his case, Campbell withdrew the motions. Similarly, Reed moved to suppress a number of telephone calls that the Government recorded during his time in jail [Docket No. 76]. He withdrew the motion after the Government provided recordings of the calls, which include a warning that the call is subject to recording and monitoring. Gov't Ex. 2, July 10, 2018 (Audio of Phone Calls). Accordingly, it is recommended that each of these be denied, without prejudice, as moot.

[3]  Government Exhibit 3, like several other exhibits, is a search warrant, the application, and supporting material. For clarity, any citations identify the specific portion of the exhibit.

As part of the investigation, the FBI and Minneapolis Police Department obtained an order from this Court and a warrant from Hennepin County District Court to access the historical cell site location data from a cell phone used by Reed. Gov't Ex. 7, March 21, 2018; Gov't Ex. 8, March 21, 2018 (Application for an Order Pursuant to 18 U.S.C. § 2703(d)). From this data, the FBI determined that Reed's phone was in the vicinity of each robbery around the time each occurred. Gov't Ex. 8, March 21, 2018 (App. for Order at ¶¶ 10-17). Based upon that information, as well as Harris's statements and DNA evidence from one of the robberies, the Government submitted a criminal complaint against Reed. Reed Criminal Compl., Docket No. 1. He was subsequently indicted on four counts of interference with commerce by robbery. Indictment, Docket No. 10. Harris was included in the first count of the Indictment. *Id.*

## II.   Tyrell Campbell and the Superseding Indictment

During an armed robbery of an auto parts store on November 29, 2017, the suspects, as in the apparently related robberies, restrained the victims with zip ties. Campbell Criminal Compl. (Aff. of Christopher V. Langert at ¶ 5), Docket No. 1. As the suspects attempted to get away, one of the victims broke out of the zip ties, retrieved his personal handgun, and fired at the suspects as they ran. *Id.* at ¶ 6. Three days later, Campbell checked into the Hennepin County Medical Center, where he was treated for a gunshot wound to the back. *Id.* at ¶ 11.

At the store, police found items left behind by the suspects, including zip ties and a small part of a blue rubber glove that had apparently gotten stuck in one of the zip ties. *Id.* at ¶¶ 5, 12. Testing suggested that DNA from the glove matched Campbell. *Id.* at ¶ 12. Officers also viewed security footage from an apartment complex near the store, which showed someone matching Campbell's description approach two

3

individuals outside the apartment shortly after the robbery. *Id.* at ¶¶ 7-8, 13. Police later found paper clipped money in a yard between the apartment and the store. *Id.* at ¶ 9.

Campbell was charged with one count of interference with commerce by robbery in a Superseding Indictment, which also added two counts against Reed.[4] Superseding Indictment, Docket No. 44.

### III.   Derf Reed and the Second Superseding Indictment

Following Reed's arrest and pursuant to a warrant, police searched his phone and saw a series of calls and messages between Reed and a phone associated with Derf on the day of the June 12 robbery. Gov't Ex. 1, July 10, 2018 (Aff. of Christopher V. Langert at ¶ 9). After securing a court order, law enforcement obtained historical cell site location data for Derf's phone. *Id.* at ¶ 11. The location data and subsequent confirmation from a hotel and credit card statements placed Derf, a Chicago resident with ties to Spokane, in the Twin Cities area between June 8, 2017, and June 12, 2017. *Id.* at ¶¶ 11-13. FBI agents arrested Derf on April 19, 2018 and seized his phone. *Id.* They subsequently obtained a warrant to search the phone. Gov't Ex. 1, July 10, 2018 (Search and Seizure Warrant).

The Government subsequently filed a Second Superseding Indictment. This most recent indictment includes six counts of interference with commerce by robbery. Second Superseding Indictment, Docket No. 77. Reed is named in each count, Derf is named in the first count, and Campbell is named in the sixth count. *Id.* The indictment alleges that in the counts in which Reed is named along with one of the other Defendants, each aided and abetted the other in the commission of the crime. *Id.*

---

[4]   The Superseding Indictment included no charges against Harris, who reached a plea agreement with the Government. Plea Agreement, Docket No. 40.

## CONCLUSIONS OF LAW

**I.    Campbell's Motion to Dismiss or Disclose Grand Jury Transcripts (Docket No. 50)**

Campbell moves to dismiss the Second Superseding Indictment as against him, arguing that the Government violated his due process rights by exclusively using hearsay testimony, and thus misleading the Grand Jury. However, "[i]t has long been recognized there is no constitutional preclusion to the use of hearsay testimony in grand jury proceedings." *United States v. Rossbach*, 701 F.2d 713, 716 (8th Cir. 1983) (citing *Costello v. United States*, 350 U.S. 359 (1956)). Whatever the merits of dismissing an indictment when the Grand Jury is genuinely mislead as to the facts, Campbell's sole argument that this occurred through hearsay is without merit. *See id.* (addressing the Second Circuit's dismissal of an indictment in *United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972)).

Alternatively, Campbell seeks disclosure of the Grand Jury transcripts to explore other grounds to challenge the current Indictment. Rule 6(e) of the Federal Rules of Criminal Procedure gives courts authority to disclose "a grand jury matter . . . preliminary to or in connection with a judicial proceeding." A defendant seeking Grand Jury transcripts or minutes must demonstrate a particularized need and may not obtain them merely as a "fishing expedition." *United States v. Kocher*, 978 F.2d 1264, 1264 (Table) (8th Cir. 1992) (citing *United States v. Ferreboeuf*, 632 F.2d 832, 835) (9th Cir. 1980)). Here, Campbell fails to demonstrate a sufficiently particularized need: he admits his basis for seeking the transcripts is to fish for other, yet unknown grounds to challenge the Second Superseding Indictment.

5

Because he relies upon a rejected basis to dismiss and offers no other particularized reason to review the transcripts or minutes, Campbell's motion must be denied.

## II.     Motions to Sever (Docket Nos. 52 and 97)

Both Campbell and Derf bring motions to sever their cases from the other joined Defendants.[5] Generally, an indictment may charge multiple defendants "if they are alleged to have participated in the same act or transaction, or the same series of acts or transactions, constituting an offense or offenses . . . . All defendants need not be charged in each count." Fed. R. Crim. P. 8(b). "The rules are to be liberally construed in favor of joinder." *United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir. 2005). Even if defendants are properly joined, a defendant may seek severance if the joinder "appears to prejudice [the] defendant." Fed. R. Crim. P. 14(a). The prejudice must be "compelling or severe," meaning "some appreciable chance that defendants would not have been convicted had the separate trial they wanted been granted." *United States v. Young*, 753 F.3d 757, 777 (8th Cir. 2014).

As an initial matter, the joinder of the Defendants is proper. Campbell and Derf both allegedly robbed stores with Reed, though on different occasions, so joinder with him is proper as they participated in the same act constituting the offense. Fed. R. Crim. P. 8(b). All of the counts in the Second Superseding Indictment, each involving Reed, are of the same character—and also likely "constitute parts of a common scheme or

---

[5]     Campbell also seeks to sever his counts. *See* Def.'s Mot. for Severance of Defs., Docket No. 52. But Campbell faces only one count. Second Superseding Indictment, Docket No. 77. Even if such a request were cognizable, the effect would be the same as severing him as a Defendant, as "where an indictment joins defendants as well as offenses, the propriety of the joinder of offenses is governed by Rule 8(b), rather than Rule 8(a)." *United States v. Mann*, 701 F.3d 274, 289 (8th Cir. 2012). The Court treats the motion to sever counts as a motion to sever defendants as they are identified here.

6

plan"—so joinder of those counts is appropriate. Fed. R. Crim. P. 8(a). Because each is properly joined as a defendant with Reed and all of the charges against Reed are properly joined, the offshoot of Campbell and Derf's joinder is proper.

As to severance, Campbell and Derf speculate that they may be prejudiced because the jury will have difficulty distinguishing facts between the Defendants, their right against self-incrimination may be violated, and their right to confront their accusers may be violated. But speculation is not sufficient to sever a properly joined matter. *United States v. Quiroz*, 57 F. Supp. 2d 805, 825 (D. Minn. 1999). Neither Defendant has demonstrated that either will present a defense so antagonistic that the "jury will unjustifiably infer that *this conflict alone demonstrates that both are guilty*." *United States v. Payton*, 636 F.3d 1027, 1037 (8th Cir. 2011) (emphasis original). Derf suggests a "probable *Bruton* problem[]," referring to the Supreme Court's holding in *Bruton v. United States*, 391 U.S. 123 (1968), that admission of a co-defendant's prior statements in a joint trial where the co-defendant did not take the stand could violate the defendant's right to confrontation if the statements inculpated him. Reed's Mem. L. Supp. Mot. Severance 2. But he offers nothing more to show the level of that probability. Finally, as to any spillover of evidence, it is not clear how the prejudice would be severe enough to warrant severance. Limiting instructions can cure most evidentiary concerns. *United States v. Helmel*, 769 F.2d 1306, 1322 (8th Cir. 1985). While very similar in character, each robbery was a discrete event on a specific date, making compartmentalization easier. Without a showing of actual prejudice, Rule 8 favors the judicial economy that joinder creates. The motions are denied.

### III. <u>Motions to Suppress</u>

#### A. Derf's Cell Phone Warrant (Docket No. 95)

Derf challenges the sufficiency of probable cause supporting the search warrant issued for his cell phone that was seized upon his arrest. He argues that, absent the requisite probable cause, any evidence obtained from that search must be suppressed. Even when a cell phone is seized incident to an arrest, police must secure a warrant supported by probable cause to search it. *Riley v. California*, 134 S.Ct. 2473, 2495 (2014).  A search warrant is supported by probable cause if, "based on the totality of the circumstances set forth in the application and affidavits, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Johnson*, 528 F.3d 575, 579 (8th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a search warrant . . . ." *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009) (internal quotations omitted).

There was sufficient probable cause to issue a search warrant for Derf's phone. The affidavit submitted with the warrant application clearly states that Harris, referred to as OH, told the FBI that Derf "was involved in the robbery on June 12, 2017." Gov't Ex. 1, July 10, 2018 (Langert Aff. at ¶ 8). From this, the magistrate could reasonable infer— if any inference is needed—that Derf was more than merely present at the crime scene, even if the full extent of his participation was unclear. Further, cell tower location data and credit card statements placed Derf, a resident of Chicago, in the Twin Cities during the robbery in which he allegedly participated. *Id.* at ¶ 11. The affidavit linked the cell phone and its corresponding number to Derf through data stored in Reed's phone, hotel records, and statements made by Derf's girlfriend during his arrest. *Id.* at ¶¶ 9, 12, 16.

Finally, the affidavit articulated a reasonable nexus between the place to be searched (the phone) and the evidence the police believed they would find, including messages between Derf and Reed. *Id.* at ¶¶ 20-21; *see United States v. Keele*, 589 F.3d 940, 943 ("The nexus required by the Fourth Amendment, however, is that between the contraband being sought and the place to be searched.") (internal quotations omitted). Because there was sufficient probable cause, the subsequent search of the phone need not be suppressed.

### B.  Cell Site Location Data Post-*Carpenter* (Docket Nos. 100 and 102)

Defendants Reed and Derf also seek suppression of all evidence stemming from the use of cell phone location data. During its investigation, the FBI obtained by court order, but without a warrant, cell site location data from Reed's and Derf's wireless service providers pursuant to the Stored Communications Act. Under the Act, police could obtain, by court order, historical cell site location data from telecommunications companies if it "offer[ed] specific and articulable facts showing that there are reasonable grounds to believe" that the records requested "are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). On June 22, 2018, the Supreme Court issued its decision in *Carpenter v. United States*, holding that obtaining such location information requires a search warrant supported by probable cause. 138 S.Ct. 2206 (2018). Citing *Carpenter*, Reed and Derf have moved to suppress the historical cell tower location information obtained in their cases because the FBI received the data through court orders rather than through execution of a properly issued search warrant. However, because the FBI reasonably relied upon the law as it existed at the time the cell tower location data was obtained, the data need not be suppressed.

Because the Fourth Amendment—which protects against unreasonable searches and seizures—does not provide its own enforcement mechanism, the Supreme Court recognized an exclusionary rule that precludes the use of unconstitutionally obtained evidence at trial. *Davis v. United States*, 564 U.S. 229, 236 (2011). But exclusion is not required when the police act with an objectively reasonable good faith believe that their actions were lawful. *United States v. Leon*, 468 U.S. 897, 918-19. This "good faith" exception to the exclusionary rule recognizes that the "rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144 (2009). Thus, the good faith exception applies, *inter alia*, when police reasonable rely upon subsequently invalidated statutes, *Illinois v. Krull*, 480 U.S. 340 (1987), or on then-binding judicial precedent. *Davis*, 564 U.S. at 241; *cf. Leon*, 468 U.S. at 912 (noting that "no Fourth Amendment decision marking a "clear break with the past" has been applied retroactively").

Although there is no dispute that, if they wished to obtain the cell tower location data today, the police would first need to get a warrant, such was not the case before June 22, 2018. The Stored Communications Act expressly authorized law enforcement seeking such data to secure a court order based upon less than probable cause. 18 U.S.C. § 2703(b)-(d). The police had no reason to believe that the statute was "clearly unconstitutional." *Krull*, 480 U.S. at 349-50 ("Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law."). As the Supreme Court recognized in *Carpenter,* "[t]his sort of digital data—personal location information maintained by a third party—does not fit neatly under

10

existing precedents."[6] 138 S.Ct. at 2214. In relying upon the statute, the FBI agents did not act even grossly negligently in their approach to the Defendants' Fourth Amendment rights. *See United States v. Davis*, 687 F.3d 901, 904-05 (8th Cir. 2014) (holding that police reliance upon then-binding circuit precedent was in good faith, despite an ultimately contrary case pending at the Supreme Court). Because law enforcement reasonably relied upon the statute and because suppression of the evidence will not deter the kind of police misconduct that animates the application of the exclusionary rule, Defendants' motions are denied.

## ORDER

For the reasons set forth above, IT IS HEREBY ORDERED THAT:

1.     Derf Reglan Rahine Reed's Motion to Sever Defendant [Docket No. 97] is DENIED.

2.     Defendant Tyrell Dandre Campbell's Motion to Sever Defendant [Docket No. 52] is DENIED.

---

[6] Although this supports the reasonableness of the police's reliance upon the statute, it may cast doubt upon the Government's second line of argument that they reasonably relied upon binding judicial precedent. The Supreme Court made clear that its third-party doctrine did not obviously extend to the data at issue here, and the Eighth Circuit follows other circuits in requiring the relied-upon precedent to be clearly established and authorize the specific conduct. *See United States v. Burston*, 806 F.3d 1123, 1128-29 (8th Cir. 2015) (distinguishing prior precedent authorizing drug dog sniffs in common areas of apartment complex with a sniff "six to ten inches from the suspect's window"); *see also United States v. Davis*, 598 F.3d 1259, 1266-1267 (11th Cir. 2010) ("We stress, however, that our precedent on a given point must be unequivocal before we will suspend the exclusionary rule's operation."). Before *Carpenter*, the Eighth Circuit never specifically addressed the constitutionality of § 2703 orders and the police could not reasonably have relied upon the decisions of other circuits, which are not binding in Minnesota.

## RECOMMENDATION

For the reasons set forth above, THE COURT RECOMMENDS THAT:

1. Defendant Tony Lendell Reed's Motion to Suppress Electronic Surveillance Evidence [Docket No. 76] be DENIED as moot based upon the representations of the Government in its written response to Defendant's pretrial motion and the representations of the Government and Defendant's counsel at the July 10, 2018 hearing.

2. Defendant Tony Lendell Reed's Motion to Suppress Evidence Obtained From Unlawful Searches and Seizures [Docket No. 102] be DENIED.

3. Defendant Tyrell Dandre Campbell's Motion to Dismiss Indictment [Docket No. 50] be DENIED.

4. Defendant Tyrell Dandre Campbell's Motion to Suppress Statements, Admissions and Answers [Docket No. 60] be DENIED as moot based upon the representations of the Government in its written response to Defendant's pretrial motion and at the hearing.

5. Defendant Tyrell Dandre Campbell's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 62] be DENIED as moot without prejudice based upon the representations of the Government in its written response to Defendant's pretrial motion and at the July 10, 2018 hearing.

6. Defendant Derf Reglan Rahine Reed's Motion to Suppress Evidence Obtain by Search and Seizure [Docket No. 95] be DENIED.

7. Derf Reglan Rahine Reed's Second Motion to Suppress Evidence Obtained by Search and Seizure [Docket No. 100] be DENIED.

Dated: September 14, 2018

*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).